1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                No.  1:18-cr-00060-NONE

12                   Plaintiff,

13          v.                                 ORDER DENYING DEFENDANT'S
                                               MOTION FOR COMPASSIONATE
14   GABRIEL DAMIAN CORTEZ,                     RELEASE

15                   Defendant.                (Doc. Nos. 38, 45)

16

17

18          Pending before the court is defendant Gabriel Damian Cortez's motion for compassionate

19   release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's family

20   circumstances which he alleges have left him as the only available caretaker for his mother,

21   stepfather, and grandmother.  (Doc. No. 45.)  For the reasons explained below, defendant's

22   motion will be denied.

23                              **BACKGROUND**

24          On January 7, 2019, defendant entered his plea of guilty to count one of the indictment

25   charging him with being a convicted felon in possession of a firearm in violation of 18 U.S.C.

26   § 922(g)(1).  (Doc. Nos. 22, 24.)  The presentence report prepared in his case summarized the

27   offense conduct, reporting that in February 2018, defendant Cortez led local law enforcement on

28   a high-speed vehicle chase in Ceres, California.  (Doc. No. 28 (Presentence Report) at 4.)  When

                                           1

1  the pursuit ended, authorities recovered two handguns from defendant's vehicle.  (*Id.* at 5.)  While

2  defendant's criminal history was lengthy, it was noted at the time of his sentencing that he also

3  experienced an extremely difficult upbringing as an adolescent.  (*Id.* at 7–13, 16–17.)  It was

4  determined that under the U.S. Sentencing Guidelines defendant Cortez's adjusted offense level

5  was 23 and his criminal history placed him in category V, resulting in an advisory sentencing

6  guideline range calling for a term of imprisonment of between 84 and 105 months.  (*Id.* at 23.)

7  The U.S. Probation Office recommended a high-end guideline sentence of 105 months

8  imprisonment.  (*Id.*)  On April 1, 2019, the sentencing judge departed downward from the

9  advisory guideline range and imposed a sentence of 72 months in prison with a 36-month term of

10  supervised release to follow.  (Doc. Nos. 34; 35 at 2–3.)

11      Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP")

12  Tucson Federal Correctional Institution in Tucson, Arizona ("FCI Tucson").  (Doc. No. 38.)  On

13  May 21, 2020, defendant filed a *pro se* motion for compassionate release pursuant to 18 U.S.C.

14  § 3582(c)(1)(A).  (*Id.*)  Thereafter counsel was appointed on defendant's behalf and that counsel

15  filed a supplemental opening brief on August 14, 2020.  (Doc. No. 45.)  On September 11, 2020,

16  the government filed its opposition to the motion, and on October 28, 2020, defendant filed his

17  reply thereto.  (Doc. Nos. 48, 52.)

18                                **LEGAL STANDARD**

19      A court generally "may not modify a term of imprisonment once it has been imposed."  18

20  U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

21  conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

22  be modified by a district court except in limited circumstances.").  Those limited circumstances

23  include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.

24  3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"),

25  motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A)

26  (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for

27  compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the

28  FSA specifically provides that a court may

                                        2

upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i)     extraordinary and compelling reasons warrant such a reduction; or

(ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of*

3

1    The applicable policy statement with respect to compassionate release in the U.S.

2    Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

3    compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also*

4    *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts

5    "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even

6    though that policy statement was issued before Congress passed the FSA and authorized

7    defendants to file compassionate release motions).  However, a large and growing number of

8    district courts across the country have concluded that because the Sentencing Commission has not

9    amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA

10   categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling

11   circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See,*

12   *e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 978–79 (C.D. Cal. 2020) (collecting cases);

13   *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

14   In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

15   defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

16   *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

17   has not specifically addressed the question of which party bears the burden in the context of a

18   motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts

19   that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United*

20

21   *Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has
     acted on the Attorney General's guidance, including one case in which a sentenced prisoner was
22   released to home confinement after serving less than half his sentence from a facility that reported
     no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort*
23   *Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.
     com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the
24   prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release
     prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid*
25   *COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-
26   manafort-released-from-prison-amid-covid-19-fears.

27   [3]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18
     U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person
28   or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

1   *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020);

2   *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7,

3   2020).

4                                    **ANALYSIS**

5           As district courts have summarized, in analyzing whether a defendant is entitled to

6   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

7   defendant has satisfied three requirements:

8                   First, as a threshold matter, the statute requires defendants to exhaust
                    administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a
9                   district court may grant compassionate release only if "extraordinary
                    and compelling reasons warrant such a reduction" and "that such
10                  reduction is consistent with applicable policy statements issued by
                    the Sentencing Commission. *Id.* Third, the district court must also
11                  consider "the factors set forth in Section 3553(a) to the extent that
                    they are applicable." *Id.*
12

13  *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

14  LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74;

15  *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

16  2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

17  "consistent with" the sentencing factors set forth in §3553(a)).

18  **A.      Administrative Exhaustion**

19          On June 10, 2020, defendant submitted an administrative request to the Warden at FCI

20  Tucson seeking his compassionate release and five days later, on June 15, 2020, the Warden

21  denied defendant's request. (Doc. No. 48 at 3.)[4]  The government appears to be of the view that

22  the exhaustion requirement's 30-day window applies even when a warden responds within 30

23  days to a request for compassionate release. (*Id.*)  The court disagrees with this view. *See* note 1,

24  above.  Nonetheless, a failure to exhaust administrative remedies is normally viewed as an

25  affirmative defense which must be plead and proven, therefore the government's concession on

26  this point may be dispositive.  In any event, the court need not resolve the issue of whether

27  _____

28  [4]  Neither the government nor defendant have attached copies of defendant's request for
    compassionate release or the Warden's denial of that request to their submissions to this court.

                                         5

1    defendant has properly exhausted his administrative remedies in this case because, as discussed

2    below, the pending motion for compassionate release fails to establish extraordinary and

3    compelling reasons warranting defendant Cortez's release.

4    **B.      Extraordinary and Compelling Reasons**

5           "Extraordinary and compelling reasons" warranting compassionate release may exist

6    based on a defendant's medical conditions, age and other related factors, family circumstances, or

7    "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

8    reasons" was included in the policy statement at a time when only BOP could bring a

9    compassionate release motion, courts have agreed that it may be relied upon by defendants

10   bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

11   JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

12          As relevant here, compassionate release may be warranted based on family circumstances.

13   Such situations include "[t]he death or incapacitation of the caregiver of the defendant's minor

14   child or minor children," as well as "[t]he incapacitation of the defendant's spouse or registered

15   partner when the defendant would be the only available caregiver for the spouse or registered

16   partner."  U.S.S.G. § 1B1.13, cmt. n.1(C).

17          Here, defendant Cortez argues that extraordinary and compelling reasons warranting his

18   compassionate release exist due to his family's circumstances.  He argues that his stepfather is

19   currently the only caretaker for defendant's mother and grandmother.  (Doc. No. 45 at 1–2.)

20   Specifically, defendant Cortez contends as follows.  His 64-year-old mother "suffers from severe

21   rheumatoid arthritis, depression, anxiety, and is unable to ambulate without medical equipment."

22   (*Id.* at 1.)  His grandmother, who is 95 years old, also requires care.  (*Id.* at 2.)  Moreover, his

23   stepfather "suffers from rheumatoid arthritis, high blood pressure, and has had a recent hip

24   replacement, and will require knee replacement soon." (*Id.* at 1–2.)  Due to the coronavirus

25   /////

26   /////

27   /////

28   /////

6

1    ("COVID-19") pandemic, "no one will come out to provide care" for his mother.  (*Id.* at 1.)[5]

2    Therefore, defendant argues that his release from prison is warranted because his mother and

3    stepfather require "someone readily able to provide care and basic activities, such as grocery

4    shopping, picking up medications, paying bills, and taking care of the household."  (*Id.* at 2.)

5    Without defendant's assistance, he argues, his mother and stepfather will be unnecessarily

6    exposed to COVID-19 if they are left to care for themselves.  (*See id.*)

7           The policy statement regarding compassionate release, however, does not provide relief

8    for inmates on the basis of their parents or grandparents.  *See, e.g.*, *United States v. Goldberg*, No.

9    12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) ("While certainly admirable, a

10   desire to help care for one's elderly parents does not qualify as an 'extraordinary and compelling

11   reason' for release[.]"); *United States v. Bonel*, No. 4:14-CR-180 (4), 2020 WL 3470319, at *3

12   (E.D. Tex. June 25, 2020) (holding that defendant's "contention that she 'is needed at home to

13   help her grandmother,' while commendable, does not meet the requirements for family

14   circumstances that establish extraordinary and compelling reasons for release from

15   imprisonment").  As one court has explained, "[m]any, if not all inmates, have aging and sick

16   parents," and some may even have grandparents.  *See United States v. Ingram*, No. 2:14-cr-40,

17   2019 WL 3162305, at *2 (S.D. Ohio July 15, 2019).  As a result, "[s]uch circumstance is not

18   extraordinary."  *Id.*  Because defendant Cortez does not move for release based on the

19   incapacitation of a spouse, the court need not address whether he is "the only available caregiver"

20   for his parents and grandparent.  *See* U.S.S.G. § 1B1.13, cmt. n.1(C).  Accordingly, defendant

21   cannot demonstrate extraordinary and compelling reasons justifying his compassionate release

22   based on the policy statement pertaining to family circumstances.

23          Defendant further argues that the court should exercise its discretion and find that

24   extraordinary and compelling reasons exist based on the catch-all provision, which several courts

25   

26   ───────────────────
     [5]  Although the pending motion cites the risk posed by the COVID-19 pandemic, defendant's
     discussion of that risk is limited to his family members—not defendant himself.  (*See passim*
27   Doc. Nos. 45, 38 (defendant's *pro se* motion for compassionate release).)  Therefore, defendant's
     reliance on decisions granting compassionate release based on a prisoner's own vulnerabilities to
28   COVID-19 are irrelevant to resolution of the pending motion.  (*See* Doc. No. 45 at 8–11.)

have held permits compassionate release based on reasons other than those explicitly listed in the

policy statement.  The undersigned declines to rely upon the catch-all exception to expand the

scope of the policy statement pertaining to family circumstances, which is explicitly confined to a

child or a spouse.  At issue in the *Kesoyan* case, for example, was whether the policy statement at

issue could be extended to a child who was no longer a minor but instead a 24-year old adult.

2020 WL 2039028, at *4.  There, the child suffered from cerebral palsy, was developmentally

disabled, and his treating physicians approximated "his mental age to be twelve years old." *Id.*

The child also required assistance with daily activities, including "dressing himself, bathing,

[]meal preparation, cleanup, routine laundry, and any outside errands." *Id.*  He was "'[i]n no

way' a 'functional or independent adult.'" *Id.*  Based on those fact, the court found that

extraordinary and compelling reasons supporting the defendant's compassionate release existed.

*Id.*  In doing so, the court in *Kesoyan* only extended the family circumstances basis for

compassionate release in a manner that was consistent with the policy statement's intent, i.e., the

providing of care for a child.  Conversely, granting compassionate release based on a prisoner's

elderly parents or grandparents would go beyond the purpose of the policy statement for family

circumstances and would apply to "[m]any, if not all inmates," in prison even though "[s]uch [a]

circumstance is not extraordinary." *Ingram*, 2019 WL 3162305, at *2.  Moreover, even assuming

the few cases granting a prisoner's compassionate release based on the circumstances of the

prisoner's family members who were neither children nor spouses were persuasive, this court is

not persuaded by the applicability of those decisions to the facts presented by defendant Cortez's

pending motion.  Although some cases have recognized non-traditional family arrangements, the

family members in those cases suffered from far more serious medical conditions than defendant

Cortez's family suffers from and, in any event, compassionate release in those cases was based in

part on the presence of other factors as well, including the inmate's rehabilitation.  *See Kesoyan*,

2020 WL 2039028, at *4 (citing *United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, *3

(N.D. Ill. Apr. 3, 2020) (granting compassionate release where an inmate's aunt suffered from

stage four cancer which "contribute[d]" to a finding of extraordinary and compelling reasons, in

addition to the inmate's documented rehabilitation after serving most of his 300-month

8

sentence)).  Here, the medical condition of defendant Cortez's family members—which is the

only basis he relies upon in support of his motion[6]—does not warrant his early release from

imprisonment.  In short, the court concludes that the catch-all exception simply does not apply to

the circumstances presented in this case.

Therefore, the court does not find extraordinary and compelling reasons justifying

defendant Cortez's compassionate release pursuant to § 3582(c)(1)(A).

**C.      Consistency With the § 3553(a) Factors**

Because the pending motion fails to establish extraordinary and compelling reasons

justifying compassionate release in this case, the court need not address whether any reduction in

defendant's sentence would be consistent with consideration of the sentencing factors set forth at

18 U.S.C. § 3553(a).  Nonetheless, the court notes that defendant Cortez has served less than half

of his sentence—about 30 months of his 72-month sentence.  (Doc. Nos. 45 at 3; 48 at 3.)

Although the court is cognizant of the difficulties surrounding defendant's upbringing, the

sentencing judge appears likely to have taken those considerations into account in imposing the

sentence that defendant is now serving.[7]

---

[6] Although the government has attached to its opposition exhibits showing defendant Cortez has taken coursework while in prison, (Doc. No. 48 at 21–39), neither the *pro se* motion nor the supplemental motion filed by counsel on defendant's behalf argues that defendant Cortez's rehabilitation provides a basis for his compassionate release at this time.  (*See* Doc. Nos. 38, 45.) In any event, the court would not be persuaded that defendant has rehabilitated based simply on the fact that he has taken some coursework while serving his term of imprisonment.

[7] Defendant has suggested that the court could amend the conditions of his supervised release to require him to serve the remainder of his custodial term on home confinement.  (Doc. No. 45 at 13.)  First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)."  *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" and the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement").  The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment.

**CONCLUSION**

For the reasons explained above, defendant's motion for compassionate release (Doc. Nos. 38, 45) is denied.

IT IS SO ORDERED.

Dated:   __**November 23, 2020**__                          _____
                                                                          UNITED STATES DISTRICT JUDGE

---

*See United States v. Connell*, No. 18-cr-00281-RS-1, 2020 WL 2315858, at *5, n.6 & *7 (N.D. Cal. May 8, 2020).  Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served and modify the conditions of supervised release to require home confinement for the remainder of his sentence.  The court is unwilling to do so for the reasons set forth above.  The BOP is aware of its capabilities to effectively and appropriately care for defendant Cortez in a custodial setting.  If the BOP determines that defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard, the court trusts it will do so.  The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence should be reduced at this time.